Opinion issued September 4, 2003














In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-01-00815-CV
____________

CLYDE ASHWORTH, PAULA WELCH, JAMES ALBER, MARY ALBER,
BRET BIERI, AND PAMELA BIERI, Appellants

V.

ASPECT RESOURCES LLC, VERITAS DGC LAND, INC., AND
AMERIDIAN TECHNOLOGIES, INC., Appellees




On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 99CV0633




MEMORANDUM OPINION
          This is an appeal from a final judgment signed on September 21, 2001. The
final judgment consists of a partial, no-evidence summary judgment on the record
with respect to certain causes of action and, specifically referenced in the final
judgment, a directed verdict on other causes of action and a jury verdict on the one
cause of action submitted to the jury. 
          The issues for this Court are whether the trial court (1) erred in granting a
partial no-evidence summary judgment against the plaintiffs/appellants


 and in favor
of the defendants/appellees, Aspect Resources, LLC (“Aspect”) and Veritas DGC
Land, Inc. (“Veritas”), under the appellants’ legal theories of res ipsa loquitur, strict
liability, negligent misrepresentation, geophysical trespass, and trespass; (2) erred in
directing a verdict that the appellants take nothing against the defendant/appellee,
Ameridian Technologies, Inc. (“Ameridian”); (3) erred in directing a verdict that the
appellants take nothing against Aspect and Veritas, under the appellants’ legal
theories of nuisance, fraud, trespass, gross negligence, and for the recovery of mental
anguish and/or punitive damages; (4) erred in excluding certain witnesses and in
restricting certain testimony at trial; and (5) abused its discretion when it denied the
appellants’ motion for new trial because plaintiffs’ exhibit 64 was not tendered to the
jury. We affirm.
 
 
Background
          Aspect acquired certain drilling rights in the Gillock Field in Galveston County
sometime before February 1998 and wished to conduct geophysical or seismic
operations, mapping the geology of the area. The seismic operations in question
involved exploding in specific shot holes, approximately 80 feet in the ground, using
2.5 to 5.5 pounds of explosives, and the use of vibroseis trucks.
          Veritas was the contractor Aspect hired to conduct the actual seismic
operations. Aspect also hired Ameridian to provide seismic monitoring services for
the vibroseis operations. Although Ameridian’s letterhead characterized the company
as a “consulting engineering” firm, in fact, Ameridian did not employ engineers.
          On February 24, 1998, Aspect sent a letter to the fire marshal of the city of
Dickinson to apply for a permit to conduct such geophysical or seismic operations. 
The letter also nominated a company to serve as the third-party engineer for the
operations. However, the nominated company was not ultimately hired by Aspect.


 
The mayor of the city of Dickinson signed the letter “agreed and accepted” on
February 24, 1998. Aspect appears to have sent similar letters to other cities within
Galveston County. The record does not contain copies of these letters with the
acceptance of the other cities noted thereon.
          Apparently, Aspect also sent a letter to Galveston County because, on May 11,
1998, the Commissioners’ Court for Galveston County issued permit number CR
2220, authorizing Aspect to conduct limited geophysical operations. The permit
required Aspect to employ a third-party engineer specializing in seismology, but did
not name the third-party engineer. The engineer was obligated to remain on the job
during the performance of all operations, and the engineer’s duties included making
recommendations designed to eliminate any potential damage to property belonging
to any third party. The permit also required Aspect to contact each resident or
business within 250 feet of its operations before the operations began and to place ads
in local newspapers explaining the work to be done. 
          The seismic testing for the Gillock project began on July 13, 1998 and
continued until either July 21, 1998 or August 3, 1998. For purposes of this appeal,
the precise end date is not important.
          Appellants, Paula Welch and Clyde Ashworth, lived in and owned a home
outside any city limits, but within the territory of Galveston County. Their home was
located between 2,500 and 2,750 feet from the area where the seismic operations were
being conducted. Appellants Mary and Jim Alber lived in a home next to the
Welch/Ashworth home in Galveston County. Appellants Bret and Pamela Bieri lived
in and owned a home in the city of Dickinson. All the appellants complained that the
blasting, on or about July 18, 1998, caused their house foundations to crack.
          On July 19, 1998, in response to the complaints of Welch, Mickey Bradley of
Bradley Safety Systems in Oklahoma, a subcontractor of Ameridian, was sent to her
house. He came out for about an hour on July 19, and returned on July 20 for the
purpose of setting up seismographs on the property. At some point, Bradley also
went to look at the Alber house.
          On July 31, 1998, Bradley submitted a report to Aspect. That report stated that
although the shots were audible on July 20, 1998, the seismographs set up on the
Welch/Ashworth property were not triggered. The report also stated that the
Welch/Ashworth and Alber homes had no interior wall cracks, and that the
foundation cracks claimed by the homeowners to have been caused by the blasting,
in fact, were filled with dirt, grass, or grease and appeared to be “old” cracks. It
appears that based on the Bradley report, Aspect paid no damages to any of the
homeowners.
          In the summer of 1999, appellants brought separate suits against their
homeowners’ insurance carrier. The insurance carrier filed a third party petition
against Aspect, Veritas, and Ameridian, claiming that their seismic activities had
damaged the appellants’ properties. Appellants subsequently amended their petitions
to assert claims directly against Aspect, Veritas, and Ameridian. Welch and
Ashworth (in their third amended petition) asserted causes of action against Aspect,
Veritas, and Ameridian based on nuisance, negligence/gross negligence, tortious
conduct,


 and strict liability and sought actual and exemplary damages, as well as
damages for mental anguish and attorney’s fees. They also specifically pleaded the
doctrine of res ipsa loquitur. The second amended petitions of the Albers and the
Bieris contained pleadings essentially the same as those of Welch and Ashworth. The
appellants and their insurance carrier settled their disputes in 2000.
The Summary Judgment
          In their first point of error, appellants argue that the trial court erred in granting
a no-evidence summary judgment for Aspect and Veritas on strict liability,
geophysical trespass, res ipsa loquitur, negligent misrepresentation, and trespass.
          Aspect and Veritas filed their first joint “no-evidence motion for summary
judgment” on November 3, 2000. They sought summary judgment with respect to the
following claims set forth in the appellants’ first amended petition and intervenors’
petition: negligence, the intentional torts, strict liability, and exemplary damages. 
Aspect and Veritas filed their second joint “no-evidence motion for summary
judgment” on January 19, 2001 to address the appellants’ cause of action for nuisance
that was asserted in the third amended petition of Welch and Ashworth and the
second amended petitions of the Albers and the Bieris, all filed on January 12, 2001.
          On February 12, 2001, before the jury panel came in for voir dire, the trial court
considered and ruled on Aspect and Veritas’s motions for summary judgment. On the
record, the trial court granted the no-evidence motion for summary judgment on the
appellants’ claims under the doctrine of res ipsa loquitur, strict liability, negligent
misrepresentation, geophysical trespass, and trespass. Also on the record, the trial
court denied the no-evidence motion for summary judgment on the appellants’ claims
of nuisance, negligence, and fraud. We follow the usual standards in reviewing the
trial court’s granting of summary judgment. See Flameout Design & Fabrication,
Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.—Houston [1st
Dist.] 1999, no pet.); Tex. R. Civ. P. 166a(i).
          1.       Geophysical Trespass and Trespass
          The appellants complain that Aspect and Veritas did not include the claim of
geophysical trespass or trespass


 in either of their motions for summary judgment. 
According to the appellants, it was, therefore, error to grant the summary judgment
on these causes of action and the causes of action should have gone to the jury.
          This Court has read the operative pleadings of the appellants at the time of the
summary judgment, which were also the ones in effect when the judgment was
signed.


 As Aspect and Veritas point out, these pleadings do not contain a cause of
action for geophysical trespass or trespass. The trial court, in the summary judgment
ruling, commented, “I’m not real convinced that [geophysical trespass] is raised by
the pleadings. . . . The trespass allegations are granted, geophysical or otherwise.” 
          The appellants state in their brief that the issues of geophysical trespass or
trespass were raised in Welch’s answer and counter-claim, filed in September 1999. 
The appellants do not argue that the issues of geophysical trespass or trespass were
contained in their final trial pleadings in effect when the summary judgment was
granted, and, clearly, these earlier-pleaded issues were abandoned in the final trial
pleadings. See, e.g., Wheeler v. Methodist Hosp., 95 S.W.3d 628, 634 n.2 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (by omitting from his second amended
petition certain claims, plaintiff abandoned them; therefore, appeals court did not
consider whether summary judgment on omitted claims was proper); Akin v. Santa
Clara Land Co., Ltd., 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet.
denied) (plaintiff waived any complaint of trial court’s grant of summary judgment
on two causes of action abandoned when plaintiff amended her pleadings). Nor does
the record indicate that the issues of geophysical trespass or trespass were tried by
consent. Therefore, for the reasons set forth in Wheeler and Akin, we do not consider
whether summary judgment was appropriate on the issues of geophysical trespass or
trespass. 
          2.       Negligent Misrepresentation
          The elements of a cause of action for negligent misrepresentation are (1) a
defendant makes a representation in the course of business or a transaction in which
the defendant has a pecuniary interest; (2) the defendant supplies false information
for the guidance of others in their business; (3) the defendant did not exercise
reasonable care in obtaining or communicating the information; and (4) the plaintiff
suffers pecuniary loss by justifiably relying on the representation. Federal Land Bank
Ass’n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991). In their brief, the
appellants assert that Aspect and Veritas made several misrepresentations regarding
the seismic exploration that is the subject of this appeal. The appellants complain that
Aspect and Veritas misrepresented to “the City”


 that nearby property owners would
be notified of seismic activities and protected from harm and that an engineering firm
would be retained to monitor seismic activities. 
          However, the appellants make no claim that such misrepresentations were made
to them by Aspect or Veritas. In granting summary judgment for Aspect and Veritas
on the cause of action for negligent misrepresentation, the trial court stated: “I am
convinced under the case law negligent misrepresentation, there’s got to be
misrepresentation made directly to the property owners.” Under the circumstances
of this case, in which the evidence in the record shows that representatives of Aspect
and Veritas did not communicate the purported misrepresentations to the appellants
and that the appellants learned of the purported misrepresentations of Aspect and
Veritas after they sustained the alleged damages, we agree with the trial court. See,
e.g., McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787,
794 (Tex. 1999) (negligent misrepresentation cause of action available only when
information is transferred by attorney to known party for known purpose); Trans-Gulf
Corp. v. Performance Aircraft Servs., Inc., 82 S.W.3d 691, 696 (Tex. App.—
Eastland 2002, no pet.) (section 552(2) of Restatement of Torts requires actual
knowledge of recipient’s identity and specific intent on part of alleged tortfeasor that
claimant would rely on misrepresentation); Facciolla v. Linbeck Constr. Corp., 968
S.W.2d 435, 443 (Tex. App.—Texarkana 1998, no pet.) (plaintiff never established
that defendant ever made misrepresentation directly to plaintiff). 
          Recognizing the absence of evidence that Aspect and Veritas made
misrepresentations to them, the appellants assert that they are third-party beneficiaries
of a “contract” who were harmed by the misrepresentations of Aspect and Veritas
concerning notice, safety, and monitoring to “the City.” It is well-settled law that a
party may sue to enforce a contract as a third-party beneficiary if the contracting
parties clearly intended that the contract benefit the third party. However, the
appellants neither explain nor demonstrate what the contract is that they rely upon or
what the intent of the contracting parties was. In three of the cases on which the
appellants rely, the courts held that there was no clear intention that the contracting
parties intended the third party to benefit.


 Two other cases cited by the appellants
do not discuss third-party beneficiaries.


 
          While acknowledging that a “permit” may not be a “contract,” the appellants
maintain that the doctrine of promissory estoppel applies when a promise is not
enforceable in contract. In support, they cite a case in which a court of appeals
concluded that the city of Houston issued three permits vesting the plaintiff with the
right to drill and that the right was not revocable, except under the terms of the
ordinance or if city officials determined that the plaintiff’s drilling was affecting the
public health and safety. See Maguire Oil Co. v. City of Houston, 69 S.W.3d 350,
370 (Tex. App.—Texarkana 2002, pet. denied). Therefore, the court found a
“promise” to allow the plaintiff to drill under the terms of the governing ordinance
as long as there was no effect on the public health and safety. See id. We fail to see
how the holdings in Maguire support the appellants’ attempt to use promissory
estoppel to remedy the absence of evidence on the elements of the cause of action for
negligent misrepresentation. The trial court did not err in granting the summary
judgment motion on the negligent misrepresentation cause of action.
          3.       Res Ipsa Loquitur
          Res ipsa loquitur is a rule of evidence whereby negligence of the alleged
wrongdoer may be inferred from the mere fact that the accident happened, provided
(1) the character of the accident and the circumstances attending it lead reasonably
to the belief that, in the absence of negligence, it would not have occurred, and (2) the
thing which caused the injury is shown to have been under the management and
control of the alleged wrongdoer. Haddock v. Arnspiger, 793 S.W.2d 948, 950 (Tex.
1990); Honea v. Coca Cola Bottling Co., 183 S.W.2d 968, 969 (Tex. 1944). In Mobil
Chemical Co. v. Bell, 517 S.W.2d 245, 255 (Tex. 1974), the supreme court stated that
in a “res ipsa” case, where several negligent acts may be inferable from the
circumstances of the accident, a single broad issue inquiring generally about
negligence would be proper. See also Burk Royalty Co. v. Walls, 616 S.W.2d 911,
924 (Tex. 1981) (supreme court restated what it said in Bell concerning res ipsa
loquitur).
          Because res ipsa loquitur is a rule of evidence, and not a cause of action, it was
error to grant summary judgment thereon. However, we do not find such error to
have been harmful. The effect of successfully invoking the res ipsa doctrine is that
the plaintiff can survive no-evidence procedural challenges. See Bell, 517 S.W.2d at
251 (no presumption of defendant’s negligence arises; jury is merely free to infer
negligence; plaintiff continues to have burden of persuading jury by preponderance
of evidence that defendant was negligent). In the court below, the appellants survived
a no-evidence summary judgment motion on their negligence cause of action. The
issue of negligence, as a broad form question, was submitted to the jury for all the
appellants against Aspect and Veritas. The appellants did not object in the trial court
to the wording of the charge concerning negligence.
          4.       Strict Liability
          The appellants’ brief contains no argument about why the trial court erred in
granting a summary judgment in favor of Aspect and Veritas on the cause of action
of strict liability. Accordingly, this issue is not preserved on appeal. Maranatha
Temple, Inc. v. Enterprise Products Co., 893 S.W.2d 92, 106 (Tex. App.—Houston
[1st Dist.] 1994, writ denied). 
          Therefore, the appellants’ first point of error is overruled.
Exclusion of Nonplaintiff Homeowner Witnesses
          In their second point of error, the appellants contend that the trial court erred
in excluding their nonplaintiff homeowner witnesses. The appellants do not identify
these witnesses or specify their number in their brief, but it appears they are
complaining about six nonplaintiff homeowner witnesses. Two other nonplaintiff
homeowner witnesses were deposed and testified at trial. The Court has carefully
reviewed the January 8, 2001 motion of Aspect and Veritas to exclude testimony of
nonplaintiff homeowners, the appellants’ motion to quash the depositions of
nonplaintiff homeowner witnesses, Aspect’s response to the motion to quash, the
record of the January 26, 2001 hearing on the motions to exclude and to quash, the
February 12, 2001 motion of Aspect and Veritas to strike plaintiffs’ witnesses’
testimony, and the trial court’s February 12, 2001 ruling on the record.
          There is no signed order in the record relative to the motion to exclude
testimony, but the trial court ruled on the record as follows:
The Court is not going to allow people that don’t have a nexus to this
incident to testify because in this Court’s mind the prejudicial effect will
outweigh the probative value. If you’ve got damages from neighboring
homeowners who were within the blast area that affected the homes
involved in this lawsuit, I’m probably going to let them testify. If
they’re outside that area, I’m not going to let them testify and I will
sustain an objection to their testimony. But I’m not going to pre-rule on
what witnesses will say or may say or not say or whatever.
 
(Emphasis added.) Toward the end of the hearing, the trial court instructed the
appellants’ counsel that it would allow the designation of 10 nonparty homeowner
witnesses.
          On February 12, 2001, the day trial proceedings began, Aspect and Veritas
filed a motion to strike plaintiffs’ witnesses’ testimony. According to that motion,
nonplaintiff homeowners Glenn Schaeffer, Tommy Tidwell, Estella & Joe Villareal,
Jim Wines, and Sandra Wilbanks had failed to appear for their noticed deposition on
February 3, 2001, and Aspect and Veritas sought to have their testimony excluded at
trial. Only two nonplaintiff homeowners had been deposed on February 3: Jennifer
Acklen and Eddie Burns.


 The record does not contain any response by the appellants
to the motion to strike, nor does the record contain a written order on that motion.
          Before the jury panel came in, the trial court ruled as follows concerning the
motion to strike:
As far as motions to exclude witnesses, I made my ruling in previous --
made my previous ruling. And I will tell you that, that as witnesses are
called and objections are made to exclude them, I’m going, I’m going
to consider them. But we know we have two, we know we have two
nonparty property owners who were deposed. We know we’ve got those
two video depositions. They’ve been video taped, I presume, or at least
that’s what the pleadings indicate. And certainly those are conformative
with my Order. And they’re certainly going to be allowed to be
presented.
 
(Emphasis added.)
          This is the only “exclusion ruling” relative to nonplaintiff homeowner
witnesses referenced by the appellants in their brief. It is clear from what the trial
court said that no witnesses were excluded before trial. The trial court stated it would
rule on the exclusion of witnesses as they were called, but it does not appear from the
record that the appellants called any nonplaintiff homeowner witnesses, other than
Jennifer Acklen and Eddie Burns, who testified through videotaped depositions. 
          Rule 103 of the Texas Rules of Evidence provides that error may not be
predicated upon a ruling which admits or excludes evidence unless a substantial right
of the party is affected and (1) a specific objection is made on the record and (2) the
substance of the evidence was made known to the court. With respect to the subject
matter of this point of error, this Court concludes that the trial court’s ruling
complained of did not exclude evidence or, if it did, the appellants failed to object to
the ruling when it was made. Furthermore, the appellants did not make the substance
of the testimony of the nonplaintiff homeowner witnesses known to the trial court. 
While the appellants make the conclusory statement that they were ultimately harmed
by the trial court’s ruling and that the effect of excluding the testimony “more likely
than not caused the rendition of an improper judgment,” the Court is unable to
evaluate this statement in the absence of a bill of exception. See Tex. R. App. P.33.2;
Wade v. Comm’n for Lawyer Discipline, 961 S.W.2d 366, 374 (Tex. App.—Houston
[1st Dist.] 1997, no pet.) (appellant made no offer of proof to identify excluded
testimony of which he now complains). Therefore, the appellants’ second point of
error is overruled.
 
 
Robinson/Daubert Hearing
          In their third point of error, the appellants argue that the trial court erred in
restricting Dr. Ebow Coleman’s testimony on the issue of causation without
conducting a Robinson/Daubert


 hearing.
          We have reviewed the record, which consists of the Robinson/Daubert motion
and supplement thereto filed by Aspect and Veritas (supported by an affidavit and
containing record references to the deposition of Dr. Coleman) and the reporter’s
record of the discussion of the trial court and attorneys for the parties concerning
whether Dr. Coleman’s testimony should be limited. For several reasons, we
conclude the trial court did not abuse its discretion by ruling to limit the testimony of
Dr. Coleman without holding what the appellants characterize as a
Robinson/Daubert-style hearing.
          First, in fact, there was a hearing on February 15, 2001, on the
Robinson/Daubert challenge to Dr. Coleman’s testimony. No evidence was
presented, but arguments of counsel were heard. Second, at the hearing, the record
does not show that the appellants, who had the burden of establishing the
qualifications of Dr. Coleman, attempted to present evidence or to call Dr. Coleman
as a witness, even though he was present in the courtroom. Third, even assuming that
the February 15 hearing was not a proper Robinson/Daubert hearing, and we do not,
we have previously held that a Robinson/Daubert hearing may not be necessary. A
trial court may base a Robinson/Daubert ruling on the experts’ deposition and
affidavit testimony, rather than calling the experts to testify at the hearing. See Piro
v. Sarofim, 80 S.W.3d 717, 720 (Tex. App.—Houston [1st Dist.] 2002) (order). That
is what appears to have happened here. 
          Even if there was error as the appellants assert, and we do not agree that there
was, despite the ruling of the trial court, Dr. Coleman was allowed to testify, in
essence, that the seismic operations caused damage to the homeowners’ foundations.


 
Any error was harmless. Therefore, the appellants’ third point of error is overruled.
Directed Verdicts for Aspect, Veritas, and Ameridian
          In their fourth point of error, the appellants contend the trial court erred in
granting Ameridian’s motion for a directed verdict, dismissing their suit against
Ameridian. In their fifth point of error, the appellants maintain the trial court erred
in granting Aspect’s and Veritas’s motion for directed verdict on the issues of fraud,
gross negligence, punitive damages, nuisance, and mental anguish. The appellants
brief these two points together; therefore, we address them together.
          We review the rendition of a directed verdict in the light most favorable to the
party against whom the verdict was rendered, and we disregard all contrary evidence
and inferences. Qantel Bus. Sys., Inc. v. Custom Controls Co., 761 S.W.2d 302, 303
(Tex. 1988); Smith v. Aqua-Flo, Inc., 23 S.W.3d 473, 476 (Tex. App.—Houston [1st
Dist.] 2000, pet. denied). The movant is entitled to a directed verdict when (1) a
defect in the opponent’s pleading makes it insufficient to support a judgment; (2) the
evidence conclusively establishes the truth of the factual propositions that, under the
substantive law, establish the right of movant to judgment; or (3) the evidence is
legally insufficient to raise an issue of fact on a fact proposition that must be
established for movant’s opponent to be entitled to judgment. Neller v. Kirschke, 922
S.W.2d 182, 187 (Tex. App.—Houston [1st Dist.] 1995, writ denied). The appellants
must refer the appellate court to those portions of the record where the evidence is to
be found demonstrating that the directed verdict was error. See Nawas v. R & S
Vending, 920 S.W.2d 734, 737 (Tex. App.—Houston [1st Dist.] 1996, no writ); Tex.
R. App. P. 38.1(h).
          1.       Directed Verdict for Ameridian
          After the appellants rested their case, Ameridian moved for a directed verdict
on the record, stating that the appellants had failed to establish evidence on all the
requisite elements of their claims for negligence, gross negligence, nuisance, and
fraud against Ameridian. The trial court granted the motion.
          In their brief, the appellants set forth the elements of common-law fraud,
negligence, and gross negligence. However, relative to fraud, the appellants fail to
refer to those places in the record showing evidence that is legally sufficient to raise
an issue of fact on each element of fraud as it relates to Ameridian.
          With respect to negligence, the appellants state in their brief that they
“produced a significant amount of information demonstrating negligence on the part
of the Appellees.” They contend: “Clearly, the Appellees failed to adequately
monitor testing and ensure that residents were not harmed by Appellees’ activities.” 
However, the appellants fail to refer to those places in the record showing evidence
that is legally sufficient to raise an issue of fact on each element of negligence as it
relates to Ameridian. Concerning gross negligence, the appellants fail to refer to
those places in the record showing evidence that is legally sufficient to raise an issue
of fact on each element of gross negligence as it relates to Ameridian.
          Finally, there is neither argument nor record references concerning Ameridian’s
motion for directed verdict on the issue of nuisance in the appellants’ brief. Because
of the appellants failure to provide this Court with specific record references to
evidence in the record demonstrating that fact issues existed on each element of each
cause of action asserted against Ameridian, the fourth point of error is overruled. See
Tex. R. App. P. 38.1(h); Wade, 961 S.W.2d at 373.
          2.       Directed Verdict for Aspect and Veritas
          Like Ameridian, after the appellants rested their case, Veritas moved for a
directed verdict on the record, arguing that the appellants had failed to provide
evidence of the causes of action for fraud, nuisance, mental anguish, negligence, and
gross negligence or of punitive damages. Aspect also moved for a directed verdict,
adopting the arguments of Veritas. The trial court granted the motions with respect
to fraud, mental anguish, nuisance, and gross negligence. The trial court denied the
motions with respect to negligence, and the issue of negligence of Aspect and Veritas
was submitted to the jury.
          As noted above, in their brief addressing in the same section points of error
four and five, the appellants list the elements of common-law fraud. However, the
appellants fail to refer to those places in the record showing evidence that is legally
sufficient to raise an issue of fact on each element of fraud as it relates to Veritas.
          With respect to evidence of fraud by Aspect, the appellants refer to plaintiffs’
exhibits 2, 3, 4, and 5 as containing fraudulent averments by Aspect to the city of
Texas City


 and to “the many false assertions listed previously (which will not be
reiterated, for purposes of brevity).” Exhibits 4 and 5 are neutral on their face, and
without other testimony stating that the factual statements therein are fraudulent or
misrepresentations, they themselves provide no evidence of fraud. Even if exhibits
2 and 3 offer some evidence on certain elements constituting fraud, they do not offer
evidence on all elements of fraud relating to Aspect. 
          Concerning gross negligence, the appellants fail to refer in their brief to those
places in the record showing evidence that is legally sufficient to raise an issue of fact
on each element of gross negligence as it relates to Aspect or to Veritas.
          Relative to nuisance, in their brief, the appellants state only that “[B]y and
through the testimony of the Appellants Paula Welch, Clyde Ashworth, Pamela and
Bret Bieri, James and Mary Alber and other independent witnesses, it was established
that Appellees’ seismic explorations resulted in excessive noise, strong vibrations,
and substantial damage to Appellants’ property.” The appellants do not provide this
Court with specific record references where the evidence supporting a nuisance cause
of action appears against Aspect and Veritas. 
          Although the appellants assert in their brief that the evidence in the record is
overwhelming on mental anguish, they neither list the elements of mental anguish,
provide record references to the evidence, or give any argument about their claims of
mental anguish. The appellants, having failed to provide this Court with specific
record references to evidence in the record demonstrating that fact issues existed on
each element of common-law fraud, gross negligence, nuisance, and mental
anguish—the causes of action asserted against Aspect and Veritas that were the
subject of the directed verdict motion—the fifth point of error is overruled. See Tex.
R. App. P. 38.1(h); Wade, 961 S.W.2d at 373.
 
Plaintiffs’ Exhibit 64
          In their sixth point of error, the appellants assert that the trial court erred in
denying their motion to vacate the modified judgment, motion to set aside jury
verdict, and motion for new trial because plaintiffs’ exhibit 64 may not have been
presented to the jury at the time of its deliberations. 
          We have reviewed the reporter’s record of the June 6, 2001 hearing on the
motion for new trial, and the reporter’s record of the trial, including the indexes. The
record shows as follows:
(1)The lists of exhibits “offered” and “admitted,” contained in the 13-volume reporter’s record of the trial, make no mention of plaintiffs’ exhibit 64. 
The master index contained in the first volume of the trial exhibits states “P-64
Air-Jac Driller’s Logs (Not admitted).” In summary, according to the record,
plaintiffs’ exhibit 64 was not admitted into evidence. 
 
(2)In October 2002, after the appellants filed their main brief in this Court,
but before the appellees filed their briefs or the appellants filed their reply
brief, the court reporter filed a plaintiffs’ exhibit 64. The exhibit does not contain a reporter’s certificate. No one complains that the exhibit is not the plaintiffs’ exhibit 64 in question.
 
(3)During the June 6 hearing, counsel for the appellants agreed with the
trial court that at the conclusion of the evidence at trial, representatives from
each side approached the court reporter, compiled with her all of the evidence
that had been introduced, and indicated to the trial court that they were
satisfied that all of the evidence had been compiled and was to be delivered to
the jury.

           (4)     Three witnesses were called at the June 6 hearing. One of them, a juror           in the case, testified that she had not seen plaintiffs’ exhibit 64 among the           exhibits in the jury room during its deliberations.
 
(5)A second witness, a legal assistant to the appellants’ counsel, testified
that plaintiffs’ exhibit 64 was among the exhibits compiled for delivery to the
jury room, and that, to the best of her recollection, plaintiffs’ exhibit 64 was
sent from the courtroom back to the jury room.

          (6)     The third witness, an attorney for Aspect, testified that she recalled a           black notebook containing driller’s logs being compiled with other exhibits and
          being taken to the jury room. Her description of the exhibit matched that of           plaintiffs’ exhibit 64.

          A trial court’s denial of a motion for new trial may be overturned only upon a
showing of a clear abuse of discretion. See Champion Int’l Corp. v. Twelfth Court
of Appeals, 762 S.W.2d 898, 899 (Tex. 1988) (orig. proceeding); Rabie v. Sonitrol
of Houston, Inc., 982 S.W.2d 194, 196 (Tex. App.—Houston [1st Dist.] 1998, no
pet.). A trial court abuses its discretion when it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law. See Johnson v.
Fourth Court of Appeals, 700 S.W.2d 916, 918 (Tex. 1985) (orig. proceeding); Rabie,
982 S.W.2d at 196. Because there is no evidence in the record that plaintiffs’ exhibit
64 was offered or admitted into evidence, because the appellants’ counsel agreed at
the June 6 hearing that all the evidence had been compiled to be taken to the jury
room, and because the testimony of two of the witnesses at the June 6 hearing would
have allowed the trial court to conclude that, whether admitted or not, plaintiffs’
exhibit 64 had, in fact, been taken to the jury room, this Court concludes that the trial
court did not abuse its discretion when it refused to grant a new trial to the appellants. 
Therefore, the appellants’ point of error six is overruled.
          The judgment is affirmed.
 
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Higley.